Alfred J. WHITE, Jr.,
Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 84–1104
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 4, 1984.

Sharon Gabert, Fort Worth, Tex., for plaintiff-appellant.

James A. Rolfe, U.S. Atty., Charles F. Sandoval, Wayne Hughes, Asst. U.S. Attys., Fort Worth, Tex., Thomas Stanton, W. Emmitt Roberts, Dallas, Tex., for defendant-appellee.

Before TATE, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The claimant White appeals from a judgment of the district court that affirmed the Secretary's termination of his disability benefits under the Social Security Act. 42 U.S.C. § 405(g). The termination was based upon the affirmed finding of the administrative law judge that White had engaged in substantial gainful activity and that his disability ceased in March 1979. On appeal, White asserts that the decision of the administrative law judge was not supported by substantial evidence and that the Secretary had failed to follow her own administrative regulations in determining that the claimant had engaged in substantial gainful activity.

We conclude that substantial evidence supports the Secretary's determination that the claimant had engaged in substantial gainful activity that justified the termination of his disability benefits. We find, however, that neither substantial evidence nor administrative guideline regulation support the determination that the claimant's disability ended in March 1979, and we remand for a redetermination of that issue.

*Context Facts*

The claimant White, born in 1931, age 52, injured his back in May 1969 and, except for abortive attempts to return to work December 1970 and February 1971, drew Social Security disability benefits from September 1969 without question until June 1980. Based upon his return to work in two sometimes overlapping parttime jobs (faithfully reported to the Secretary by White), the Secretary in June 1980 (a ruling reiterated and revised in September of that year) found White's earnings in these positions showed that he had regained the ability to engage in substantial gainful activities in 1979 and that therefore the disability payments would be terminated.

After hearing, the administrative law judge (ALJ) concluded to the same effect. Following administrative review that affirmed the ALJ's determination, the claimant by this action seeks judicial review of the Secretary's termination of disability

benefits. The district court affirmed by summary judgment in the Secretary's favor.

*Legal Context*

The principal issue before us concerns whether the claimant's disability benefits were properly terminated because he had engaged in "substantial gainful activity" within the meaning of the Social Security Act, so as to end his entitlement to disability benefits.

For purposes of entitlement to disability benefits, " 'disability' means . . . inability to engage in any substantial gainful activity" by reason of physical or mental impairment lasting not less than twelve months. Section 216(i)(1) of the Social Security Act, 42 U.S.C. § 416(i)(1). After an individual has been held entitled to disability benefits, he may engage in a "period of trial work" of nine months (not necessarily consecutive), which may not during that period be used as a basis for terminating his disability entitlement. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592. Disability benefits may be terminated following the third month in which the claimant engages in substantial gainful activity following the end of his trial work period, Section 223 of the Act, 42 U.S.C. § 423(e). "The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity." 42 U.S.C. § 423(d)(4).

Under the Secretary's administrative regulations, a disabled worker's disability ends in the month he has demonstrated his ability to engage in substantial gainful activity following completion of a trial work period. 20 C.F.R. § 404.1594(b)(2). The Secretary has also adopted certain earnings guidelines to decide whether a worker has engaged in substantial gainful activity, with the monthly earning limits varying by the calendar year. Thus, the Secretary will "ordinarily" consider the claimant to have engaged in substantial gainful activity if his "earnings average more than $280 a month in calendar year 1979" or "average more than $300 a month in calendar years after 1979," *id.* § 1574(b)(2). On the other hand, the Secretary "ordinarily" will consider that the claimant has *not* engaged in substantial gainful activity if his earnings average less than $180 a month in calendar year 1979 or less than $190 a month in calendar years after 1979. *Id.* § 1574(b)(3). In this case, the Secretary held that the claimant's earnings averaged more than $280 a month in 1979 and that his disability ended in March of that year.

## I.

On his appeal, the claimant White contends that substantial evidence does not support that finding. He contends that instead, the evidence shows that his earnings during 1979 averaged less than $280 but more than $180 per month, so that under the Secretary's regulations she should have applied the earning guidelines designated for that middle area, *Id.* § 1574(b)(6), which in general take into consideration factors other than earnings.[1]

Aside from certain factual differences in computation, White's contention is chiefly based upon the following circumstances. During the 1979 period, White worked intermittently at two parttime employments, as a school crossing guard and also as a security guard. While the ALJ made specific findings as to the earnings in the former employment, he just referred to the earnings in the other employment by a reference to B–21, a tabulation prepared by that employer. White contends that, in the

---

1. The claimant also argues that his light work as school crossing guard and security guard did not meet the definition of substantial gainful activity involving "significant physical or mental abilities", 20 C.F.R. § 404.1572(a), and that it "did not contribute substantially to the operation of a business", *Id.* § 1573(a). Aside from the lack of legal support for these contentions, no factual evidence introduced would justify disturbing the ALJ's determination that White's parttime employment satisfied these requirements, being parttime work engaged in for pay and profit. Id. § 1572(b). Likewise, no evidence whatsoever supports White's contentions that his earnings in these activities should not be counted as being subsidized, as if in a sheltered or special environment. *Id.* § 1574(a)(3); *see also, Id.* § 1574(b)(4).

absence of specific findings as to such latter income, no substantial evidence supports the ALJ's finding that his earnings during 1979 averaged more than $280 per month.

The ALJ's inadvertence in this respect does indeed cause some difficulty in ascertaining the precise basis by which he determined that White had been engaged in substantial gainful employment. However, rather than remand, we ourselves referred to Exhibit B–21, R. 178–179 (security guard earnings), as well as to those exhibits that referred to White's earnings as a school crossing guard, R. 173–177. We find that those uncontradicted statements of earnings furnish substantial evidence in support of the ALJ's factual determination and consequent legal conclusion that White had engaged in substantial gainful employment within the meaning furnished by the Secretary's earnings guidelines.

We summarize these earnings and the monthly average for 1979 in the following table:

1979 Earnings, Alfred J. White[2]

| | As School Guard Crossing Guard, City of Fort Worth | As Security Guard, Drug Treatment Center | Total |
|---|---|---|---|
| January | $ 156.60 | $ –0– | $ 156.60 |
| February | 160.95 | –0– | 160.95 |
| March | 160.95 | –0– | 160.95 |
| April | 156.60 | –0– | 156.60 |
| May | 174.00 | –0– | 174.00 |
| June | 117.45 | 62.50 | 179.95 |
| July | 42.53 [3] | 453.50 | 496.03 |
| August | 42.53 [3] | 163.00 | 205.53 |
| September | 42.53 [3] | 322.00 | 364.53 |
| October | 102.30 [4] | 336.00 | 438.30 |
| November | 102.30 [4] | 315.00 | 417.30 |
| December | 102.30 [4] | 491.75 | 594.05 |
| | $1,361.04 | $2,143.75 | $3,504.79 |

2. For what consequence it may have on the remand, we also summarize White's earnings for the first six months of 1980 as reflected by these exhibits. (White re-injured his back in June of 1980 and had inconsequential earnings for the remainder of the year.) These 1980 earnings are reflected by the following table:

January – June, 1980 Earnings, Alfred J. White

| | As School Guard Crossing Guard, City of Fort Worth | As Security Guard, Drug Treatment Center | Total |
|---|---|---|---|
| January | $ 74.40 | $ 136.50 | $ 310.90 |
| February | 251.10 | 511.00 | 762.10 |
| March | 176.70 | 297.50 | 474.20 |
| April | 139.50 | 360.50 | 500.00 |
| May | 186.00 | 364.00 | 550.00 |
| June | 93.50 | –0– | 93.50 |
| | $ 921.20 | $1,669.50 | $2,590.70 |

Total earnings in January–June 1980: $2,590.70 ÷ 6 = $431.78
Average monthly earnings for January–June 1980: $431.78

3. The above figures represent the monthly average of $127.60 reported for the quarter July–September, 1979.

4. The above figures represent the monthly average of $306.90 reported for the quarter October–December, 1979.

Total earnings in calendar year 1979: $3,504.79.

Average monthly earnings for calendar year 1979: $292.07

■ In construing a predecessor earnings guidelines administrative regulation, this court stated that the regulation set forth "earnings which are *presumed* to be evidence of substantial gainful activity. This presumption, if unrebutted by the claimant, negates a finding as the *inability* to engage in substantial gainful activity." *Davis v. Schweiker,* 641 F.2d 283, 286 (5th Cir.1981) (emphasis the court's). Here, the Secretary's factually supported determination that White's average monthly earnings during 1979 exceeded $280 entitled the administrative agency, by reason of 20 C.F.R. 404.1574(b)(2)(v), to find that White was engaged in substantial gainful employment during that calendar year, in the absence of an affirmative showing otherwise by White. No such showing having been made, we affirm the Secretary's determination that White's disability benefits should be terminated for that reason.

## II.

■ The ALJ held that, under the administrative regulations and the factual showing, White's disability ceased in March 1979, the first month after a nine-month trial work period ended. Comprehended within White's contentions of error is his dispute as to when his trial period ended, for purposes of fixing the date at which his disability benefits terminated. We find the ALJ erred in this regard.

By way of overview: For purposes of encouraging rehabilitation, a claimant drawing disability benefits is entitled to undertake a "period of trial work" for nine months, during which his compensated earnings or services are not to be considered as cause to terminate his disability benefits. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592.[5] The nine-month trial period ends with the close of the nine months, with no requirement that the nine months be consecutive. *Id.* "No benefit shall be payable ... to any individual for any month, after the third month, in which he engages in substantial gainful employment during the 15-month period following the end of the trial work period." 42 U.S.C. § 423(c).

In the present instance, the claimant White seriously injured his back in 1969, requiring major surgery on three occasions thereafter, and has drawn Social Security disability benefits from September 1969 until the present termination. In September 1978, White commenced working as a school crossing guard, which employment continued through June 1979 (at earnings averaging about $150 per month), and in late June 1979 he commenced working as a security guard at earnings between $163 and nearly $500 per month.

In the Secretary's initial determination of June 20, 1980, apparently considering the nine month trial work period to be from September 1978 through May 1979 (his work as school guard), the Secretary advised White that he had regained his ability to engage in substantial gainful activity on June 1, 1979, i.e., that his disability had ended at the end of a nine-month trial work period in May, 1979. R. 120. However, on September 17, 1980, the Secretary revised this determination and advised White that his disability had ended in March, 1979, i.e., two months earlier.[6]

---

5. However, while a claimant's disability benefits may not be terminated because of his work *during* this nine-month trial work period—"in which the worker may test [his] ability to work and still be considered disabled"—, nevertheless, "after the trial work period [the Secretary] will consider the work [he] did" during the trial period in determining whether [his] disability ended at any time *after* the trial period. 20 C.F.R. § 404.1592(a).

6. Under 42 U.S.C. § 423(c), the benefits are terminated after the third month in which the claimant engaged in substantial gainful employment following the end of the trial period. Thus, by the Secretary's initial determination, the last disability check to which White was entitled would be for the month of September 1, 1979—i.e., the third month after he regained the ability to perform substantial gainful work in the month beginning June 1, 1979. In the Sec-

The two-month difference in disability termination dates resulted because, in the subsequent *March*-ending termination, the Secretary considered as a part of the trial work period not only White's trial work in 19*78*-1979, but also two consecutive months (December 19*70* and January 19*71*) in which White, despite his back disability, had attempted to return to work, only to re-injure his back. The ALJ, for similar reasons, likewise found that the trial work period ended earlier than May 1979 (the end of nine months of 1978–79 employment as a school guard), concluding that White's disability ended in February, 1979. *See* note 6 *supra.* In doing so, the ALJ relied upon exhibit B–17, at R–168, which showed that White had returned to work in December 1970 and January 1971, which he left on February *3*, 1971, because he had to go back to the hospital.

On the showing made, the ALJ erred, in the first place, by counting the three days in February, of unshown earnings, as a full month of a trial work period. More fundamental, however, on the record before us, both the Secretary and the ALJ erred in considering the abortive two-month attempt to return to work in 1970–71 as part of the trial work period.

The Secretary's determination was apparently grounded upon the provision that a trial work period extends for nine months only, whether or not the months are consecutive. 42 U.S.C. § 422(e)(4)(A); 20 C.F.R. § 404.1592(e)(1). However, the Secretary overlooked the administrative provision that "[e]arnings from work that [a claimant] is forced to stop after a short time because of ... impairment will not show that [the claimant was] able to do substantial gainful employment." 2 C.F.R. § 404.1574(a)(1). The uncontradicted showing is that, despite his previous back injury in 1969, the claimant White attempted to return to work in December 1970 but was unable to continue past February 3, 1971, *see, e.g.*, R. 153, 168–69. Under the cited regulation, this ancient abortive two-month attempt to return to work should not have been counted as "substantial gainful employment", nor have been counted as part of White's period of trial work.

We think, therefore, that the Secretary was correct in her initial determination that the trial work period commenced with White's work as school guard in September 1978 and ended at the end of May 1979, nine months later.

We therefore reverse the Secretary's ultimate determination that White's period of trial work ended in February 1979, holding that neither substantial evidence nor the Secretary's administrative regulations support either the ending of the period of trial work earlier than June 1, 1979, or a finding that White had regained his ability to engage in substantial gainful activity before that date (as initially, on June 10, 1980, was so held by the Secretary). This proceeding will be remanded to the Secretary, with directions to her to make such finding and to afford the claimant such relief as might be consequent thereupon.

*Conclusion*

Accordingly, we **AFFIRM** the determination of the Secretary that the claimant White's disability benefits should be terminated because he had regained the ability to engage in substantial gainful activity; but we **REVERSE** the Secretary's determination that White's disability ended with the month of February 1979, and we **REMAND** for further determinations by the Secretary consistent with our holding in part II of this opinion.

---

retary's revision (September 17, 1980), the period of disability was held to end in *March* 1979, so his entitlement to disability benefits ended with the month of May, 1979, i.e., on June 1, 1979 (three months earlier than the Secretary's initial determination). The ALJ affirmed this determination as to the termination date of benefits, although finding that the disability ended in *February 1979.* We note, without comment (since there will be a remand), that the Secretary, inconsistently with the methodology of her earlier computation, apparently considered the disability as terminating *in* the last month of the trial period, rather than (as in the earlier determination) in the first month *following* the trial period.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.