**Robert P. CALANDRO, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

No. C87–163–J.

United States District Court,
D. Wyoming.

Sept. 20, 1988.

**424**

Andrew Baldwin, Wind River Legal Services, Ft. Washakie, Wyo., Elaine Bodurtha, Community Legal Service, Kingman, Ariz., for plaintiff.

Toshiro Suyematsu, Asst. U.S. Atty., Cheyenne, Wyo., for defendant.

## ORDER

JOHNSON, District Judge.

Plaintiff Robert P. Calandro seeks judicial review from the Secretary of Health and Human Services' final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq.* Plaintiff appeals the Secretary's adverse decision pursuant to 42 U.S. C. § 405(g), which gives this Court jurisdiction to review final decisions of the Secretary of Health and Human Services. Under § 405(g), this Court has power to affirm, modify, or reverse the Secretary's final decision with or without remanding the case for rehearing.

Plaintiff applied for Social Security insurance disability benefits and supplemental Social Security income on March 19, 1985. Although plaintiff, satisfied the earnings requirements under the Social Security Act, the Secretary denied his application at all stages of the Social Security Administration's review process, including the administrative hearing held before an Administrative Law Judge (ALJ) on March 11, 1986. In his May 2, 1986 decision, the ALJ found that plaintiff had engaged in substantial gainful activity since the onset of his alleged disability and he, therefore, found that plaintiff was not entitled to disability benefits. On appeal to the Appeals Council of the Department of Health and Human Services, plaintiff presented an affidavit stating that he stopped working in June 1986. In reviewing his appeal, the Council affirmed the ALJ's finding on substantial gainful activity and additionally applied the five-step disability evaluation process required by 20 C.F.R. § 404.1520 (1987) and found that plaintiff was not disabled. The Council applied the disability evaluation process to determine whether plaintiff was entitled to benefits beginning June 1986, the date plaintiff ceased his employment.

Plaintiff is a 38-year old high school graduate with one and one-half years of college. He alleges he has been disabled since 1979 after he injured his back working as a foreman for a soft drink company. Sometime after injuring his back in the mid-70s, plaintiff applied for and received worker's compensation benefits. At that time, he also applied for Social Security disability benefits. Although the Social Security Administration found plaintiff's back injury disabling, entitling him to disability benefits, he never received them because he continued to be gainfully employed after his "trial period."[1] In terminating plaintiff's original benefits, the Secretary did not conduct a continuing disability review

---

**1.** Under 42 U.S.C. § 422(c), a claimant found disabled can nevertheless work for a trial period of nine months. During that time, claimant's earnings will not be considered as reason to terminate his disability benefits. However, the Social Security Administration will terminate those benefits after the third month in which the claimant engaged in "substantial gainful activity" following the end of the trial. *See White v. Heckler,* 740 F.2d 390, 394 & n. 6 (5th Cir. 1984).

hearing to determine whether plaintiff's back impairment had improved. Plaintiff reapplied for disability benefits on March 19, 1985, alleging disability for November 1984, as a result of lower back pain.

After injuring his back in 1975, plaintiff continued to work as a foreman, which resulted in further injury to his back. Eventually he discontinued this type of work and began receiving training in business management and radio broadcasting. He has since worked intermittently as a disc jockey, a motel desk clerk, and as a waiter. As a result of these jobs, plaintiff earned in 1984 $5,719.83. His average monthly income for that year was approximately $476.00. Record on Appeal (hereinafter referred to as ROA) at 13, 159–60. In 1985, plaintiff earned $3,315.00. ROA at 13. From January 1985 to November 1985, plaintiff worked part-time as a disc jockey for a radio station in Jackson, Wyoming. ROA at 155. He worked this job every Saturday from 10:00 a.m. to 2:00 p.m. and every Sunday from 10:00 a.m. to 3:00 p.m. He earned $6.00 an hour and earned a total of $2,764.00. ROA at 155, 250. For the months of June and July 1985, plaintiff took a second part-time job with Teton Lodge Company, where he worked first as a clerk and later as a waiter. He earned $224.00 from this job. ROA at 219. In December 1985, plaintiff quit his job with the radio station and began to work as a waiter. As a waiter, he generally worked one of two shifts: 10:30 a.m. to 2:00 p.m. or 4:30 p.m. to 9:30 p.m., four days a week. ROA at 253. The record indicates that for December 1985, the plaintiff earned $227.90 working as a waiter. The record, therefore, shows that plaintiff earned a total of $3,315.90 in 1985 and his average monthly earnings for that year were $276.00. At his hearing, plaintiff testified that he was still working as a waiter and that he was earning around $280.00 monthly, which included salaries and tips. ROA at 48–49. Plaintiff, however, quit his waiter's job in June 1986. ROA at 254.

The record shows that since October 1981, plaintiff has been receiving medical treatment for his back injury from Dr. Kenneth Lambert, an orthopedic surgeon. ROA at 62. Dr. Lambert treated plaintiff for low back pain caused by a bulging disc, which was revealed by a CT scan.

On appeal, plaintiff argues that the Secretary erred in finding that he had engaged in substantial gainful activity prior to June 1986 and in finding that he was not disabled after that date. This Court's review of the Secretary's final decision is limited to whether it is supported by substantial evidence, which has been defined as more than a mere scintilla, but less than a preponderance. *Dixon v. Heckler*, 811 F.2d 506, 507 (10th Cir.1987). It has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Although this Court cannot "substitute its discretion for that of the agency," *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987), the Court must nevertheless " 'review the record as a whole, and the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.' " *Talbot*, 814 F.2d at 1461 (quoting *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). This Court can reverse the Secretary if it finds that he failed to apply the correct legal standard or failed to provide this Court with a sufficient basis to determine that he has followed appropriate legal principles. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

■ Under the Social Security insurance disability provisions, a person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical ... impairment which ... can be expected to last for a continuous period of twelve months...." 42 U.S.C. § 1382c(a)(3)(A) (1982). The statute further provides that a Social Security disability claimant will be found disabled if his impairment is so severe that it not only prevents him from doing his previous work, but also, considering his age, education,

and work experience, prevents him from doing other work existing in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Secretary has promulgated a five-step sequential evaluation process by which an ALJ determines whether a claimant is disabled. 20 C.F.R. § 404.1520 (1986). If the ALJ determines the claimant is not disabled at any step of the evaluation process, evaluation under a subsequent step becomes unnecessary. *Talbot*, 814 F.2d at 1460. The ALJ's use of this process is a regulatory requirement, *Tolany v. Heckler*, 756 F.2d 268, 270 (2d Cir.1985), and failure to follow it is reversible error. *Williams*, 844 F.2d at 750.

At step one of the disability evaluation process, the claimant bears the burden of proving he has not engaged in any gainful activity since the onset of his alleged disability. *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). If the claimant meets this burden, he must next demonstrate he has a medically severe impairment. *Id.* If the impairment is severe, the ALJ must determine at step three whether the claimant's impairment meets or equals the "Listing of Impairments" found in 20 C.F.R., pt. 404 subpt. P, App. 1, (1986). These impairments are known as Appendix 1 impairments and if the claimant has such an impairment or its equivalent, he is entitled to disability benefits because the Secretary recognizes these impairments as sufficiently severe to prevent a claimant from engaging in substantial gainful employment. *Yuckert*, 107 S.Ct. at 2294 n. 5. If the claimant does not have an Appendix 1 impairment or its equivalent, the disability evaluation process proceeds to step four where the claimant bears the burden of proving he is unable to perform his past relevant work. The claimant will not be entitled to disability benefits if he is found capable of performing his past work. If a claimant is unable to do his past work, the burden of proof shifts to the ALJ at step five where the ALJ must show that the claimant can perform other jobs existing in the national economy. *Id.* The ALJ makes this determination based on the claimant's retained residual functional capacity, age,

education, and work experience. A claimant's retained residual functional capacity (RFC) refers to his ability to perform a full range of work within one of the five categories listed by the Secretary. These categories include "very heavy work," "heavy work," "medium work," "light work," and "sedentary work." See 20 C.F.R. §§ 404.1561 and 404.1567 (1986).

■ Plaintiff's claim for disability benefits concerns his chronic back pain associated with a bulging disc in his back. In its March 23, 1987, decision, the Appeals Council found that plaintiff was not entitled to disability benefits because his back pain was not disabling. Plaintiff argues that this decision is not supported by substantial evidence. The Court agrees.

42 U.S.C. § 423(d)(5)(A) provides the proper standard for evaluating existence of disability. It states in pertinent part as follows:

> An individual should not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

In *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), the Tenth Circuit interpreted this statute to require that the claimant only show the existence of a medical impairment

that could "reasonably" be expected to produce disabling pain in some individuals. *Id.* at 164. The Court held that the claimant must show only a loose nexus between the pain alleged and the pain producing impairment, which impairment must be shown by objective medical evidence. *Id.* at 163. If a pain producing impairment is shown to exist, the ALJ must next consider the following evidence in determining whether the claimant's pain is in fact disabling: "The medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain." *Id.* After considering these factors, the ALJ may decide whether he in fact believes the claimant's assertion of severe pain.

At plaintiff's administrative hearing, he testified he experienced constant lower back pain. The plaintiff testified that the intensity of the pain would increase with physical activity. ROA at 53. Additional physical activity increases plaintiff's pain to the point where he must spend one or two days lying on the floor with his legs propped up on a pillow. At such times, the pain becomes so severe that he is unable to roll from side to side without the pain becoming unbearable. *Id.* at 53. Mr. Calandro also testified that he takes prescription pain medication approximately every two weeks and that he takes a considerable amount of aspirin daily. *Id.* at 54. The record indicates that he does not take prescription pain medications more often because of his fear of becoming addicted to them. *Id.* at 193. He also wears a back brace daily. *Id.* at 55. If he fails to wear his brace for a day or two, his muscles weaken and his back pain increases.

The ALJ received evidence from plaintiff's treating physician indicating that plaintiff has a bulging disc. ROA at 64. The bulge is located at L–4/5. *Id.* at 235. The treating physician testified that the bulge stretches the fibers around the disc and causes plaintiff's pain. *Id.* at 64. Plaintiff's treating physician's office notes indicate that he has been treating plaintiff since 1981 for severe muscle spasms and that he prescribes pain medication and

muscle relaxants. *Id.* at 238. The bulging disc was revealed by a CT scan, which indicated it was indenting a nerve sac. *Id.* at 240. The treating physician recommended against surgery because he felt back surgery for pain would be very unproductive. *Id.* at 63. He indicated that surgery would be necessary only if the disc was damaging the nerve. *Id.* at 64. The treating physician testified that plaintiff's back condition was equivalent in severity to the listed impairment in 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.05C (1986) in that plaintiff was disabled by pain.

In June 1986, plaintiff underwent a lumbar thermogram, "which strongly sugg-est[ed] the presence of excessive muscle spasm." ROA at 249. It is uncontradicted that plaintiff's bulging disc is an impairment capable of producing pain. The Court, therefore, concludes that the first element under *Luna* is present.

The second element under *Luna* requires that there be a nexus between a pain-producing impairment and the pain alleged. Plaintiff's treating physician, Dr. Lambert, testified that plaintiff had a normal pain threshold. ROA at 65. Dr. Lambert's observations of plaintiff indicate he has observed plaintiff suffer from muscle spasms. He testified that the bulging disc would reasonably be likely to produce the pain to the extent that claimant alleges. *Id.* at 66. Under *Luna*, "if an impairment is reasonably expected to produce some pain, allegations of disabling pain" are sufficiently consistent to satisfy the requirement that there exists a loose nexus between plaintiff's medical diagnosis and his allegations of pain. 834 F.2d at 163. The Court finds there is a loose nexus between plaintiff's impairment and his allegations of pain. To determine whether plaintiff's pain is in fact disabling,—the third element under *Luna*—the Secretary must "consider[ ] all medical data presented, any other objective indications of pain, *and subjective accounts of the severity of the pain. At this point, the decision maker may assess the claimant's credibility.*" *Williams,* 844 F.2d at 753 (citing *Luna,* 834 F.2d at 163) (emphasis added).

In determining whether a claimant has satisfied the third element under *Luna,* the court enumerated other factors in addition to medical tests results that aid in determining the credibility of a claimant's subjective complaints of pain. These factors include claimant's daily activities, the claimant's persistent attempt to find relief for his pain, including medical treatments and the use of pain medication, the dosages, effectiveness, and side effects of medication. 843 F.2d at 165–66. Here, the record indicates that plaintiff has tried various measures to deal with his pain. He wears a lumbosacral brace most of the time, applies ice to his neck and low back, attempts to do stretching exercises, and he deliberately controls his weight in an effort to keep his pain within tolerable limits. ROA at 54–56. Plaintiff also takes prescription pain medication. Plaintiff only takes this medication every two weeks because he fears if he takes it more regularly, he will become addicted to it. ROA at 193. His failure to take it on a more regular basis may not necessarily be an indication that he does not experience the pain to the degree alleged. See *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir.1986) (Claimant may have other reasons other than lack of impairment for not seeking or taking medication). Additionally, plaintiff's roommate submitted a statement to the Social Security Administration, reading in pertinent part as follows:

> I have been a roommate to Bob for a bit over a year now and seen him in various stages of physical disability. Meaning on a good day he spends most of his time flat on his back in his bed. On a bad day it is very apparent it is difficult, to say the least, for him to even get up out of bed so he can lay on a flatter, harder surface ... floor.... My bedroom is directly below Bob's and at night, when I'm sure he doesn't know anyone can hear, there are times when I've heard him virtually scream out in pain.

ROA at 202–03. Consideration of these factors strongly suggests that plaintiff's pain is in fact disabling.

After hearing the plaintiff's and his treating physician's testimony, the ALJ stated that he was "not inclined on a medical basis to dismiss claimant's complaints [of pain] as fiction or wholly incredible." ROA at 29. Although it is unclear whether the ALJ found credible plaintiff's subjective allegations of pain, the Appeals Council specifically found that plaintiff's "allegations of disabling pain was not fully credible" because "there [was] no medical condition that could reasonably be expected to produce the pain of the severity alleged." ROA at 14–15. The Court finds, however, that the Appeals Council made a credibility determination by applying an incorrect legal standard. In *Luna,* the Tenth Circuit stated that "a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." 834 F.2d at 165.

■ Contrary to the legal standard articulated in *Luna,* the Appeals Council found that plaintiff's pain testimony was not credible because there was no objective medical evidence establishing the severity of the pain alleged. Under *Luna,* however, the Secretary must consider more than just the objective medical evidence in determining the severity of a claimant's pain. The Secretary must adequately consider a claimant's subjective evidence once a claimant establishes there is "an objective medical basis for the existence of pain." *Williams,* 844 F.2d at 754. *See also Huston v. Bowen,* 838 F.2d 1125, 1130 (10th Cir.1988) ("[t]he law in this circuit provides that ... a determination of no disability cannot be made without a full evaluation of all subjective and objective evidence of pain."). In making its credibility determination, the Appeals Council failed to indicate whether it adequately weighed plaintiff's subjective statements of pain against the factors enumerated in *Luna.* Absent this indication, the Court cannot conclude that the Secretary's credibility finding is supported by substantial evidence. Because the Council based its credibility determination by application of an incorrect legal standard, the Court is compelled to reverse this case and remand it to the Secretary. *See Williams,* 844 F.2d at 750 (application of incorrect legal standard is a ground for reversal).

Further, the Secretary's credibility finding ignores the testimony of Dr. Lambert, plaintiff's treating physician, who testified that plaintiff's bulging disc would reasonably be likely to produce the pain to the extent he alleged. ROA at 66. The Secretary must give substantial weight to the opinion of plaintiff's treating physician and can reject it only by articulating legitimate reasons. *See, e.g., Reyes v. Bowen,* 845 F.2d 242, 244–45 (10th Cir.1988) ("[a] treating physician's opinion may be rejected, but if it is rejected, the Secretary must give specific, legitimate reasons for his action."). On remand, the Secretary must adequately consider all these factors in assessing plaintiff's credibility.

The medical reports and testimony of plaintiff's treating physician unambiguously reveal that plaintiff could not perform his past relevant work as a waiter or a disc jockey. Dr. Lambert testified that plaintiff should not work as a waiter and that he could not imagine someone doing work that later left him crippled for two or three days. ROA at 67. This Court, therefore, cannot hold there is substantial evidence to support the Appeals Council's finding that plaintiff could perform his past work. The record reveals that plaintiff's pain not only is an impairment sufficient to limit him to sedentary work, but also it appears great enough to prevent plaintiff from engaging in any substantial gainful employment on a continual basis. The record further reveals that plaintiff met his burden of showing that he could not work as a waiter or as a disc jockey. These jobs appear to fall within the light work category. See 20 C.F.R. § 404.1567(b) (1986) and ROA at 74. Thus, on remand, the Court instructs the Secretary that he consider the effects of plaintiff's complaints of disabling pain and whether this pain precludes plaintiff from performing a full range of sedentary work.

Additionally, the record reflects that plaintiff experiences constant pain and, therefore, it appears he suffers from a nonexertional impairment. *See, e.g., Huston,* 838 F.2d at 1131 ("[n]onexertional pain ... can be char-

acterized as pain that is present whether or not a claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges (sedentary through very heavy)."). The Court notes that the Secretary may not conclusively apply the "grids" in determining whether plaintiff can perform a full range of sedentary work. Although the Secretary through the Appeals Council concluded that plaintiff could perform a full range of work in the medium category, there is no evidence in the record to support this conclusion, which indicates that plaintiff's past work required at most exertion that comes within the light work category.

■■■ Plaintiff also argues that the Secretary erred in finding that his work prior to June 1986 constituted substantial gainful activity. Substantial gainful activity is determined by average monthly income. *See* 20 C.F.R. § 404.1574 (1986). Income over $300.00 a month is considered substantial and income less than $190.00 a month is considered insubstantial. 20 C.F.R. § 404.1574(b)(2)(vi), (b)(3)(vi). When the claimant's income is between these figures, the Secretary must consider additional factors in determining whether the claimant has engaged in substantial gainful activity. *Jozefowicz v. Heckler,* 811 F.2d 1352, 1356 (10th Cir.1987). In determining whether plaintiff engaged in substantial gainful activity in 1985, the Court must consider these other factors because plaintiff's average monthly income for that year was $276.00. This information is "(1) whether the work 'is comparable to that of unimpaired people in the same community who are performing the same or similar occupations as their means of livelihood,' or (2) whether the work, even if significantly less than that done by unimpaired persons, is worth at least $300.00 per month." *Jozefowicz,* 811 F.2d at 1356 (quoting and citing 20 C.F.R. § 416.974(b)(6) (1986)). The Secretary argues that considering this information, he properly found plaintiff to have been engaged in substantial gainful activi-

ty. The Court disagrees and, therefore, will reverse the Secretary's final decision on this issue.

In *Jozefowicz*, the Tenth Circuit reiterated its definition of substantial gainful activity as follows:

> Performance of substantial services with reasonable regularity, either in competitive or self-employment.... Ability to ... do some work on an intermittent basis does not necessarily establish that a person is able to engage in 'substantial gainful activity,' but such activities may be considered by the Secretary, along with medical testimony, in determining the right of a claimant to disability payments under the Act.

811 F.2d at 1356 (quoting *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir.1979)) (citations omitted by court in *Jozefowicz*). Plaintiff's work as a disc jockey was intermittent and lacked the reasonable regularity expected of one engaged in substantial gainful activity. Plaintiff testified that his disc jockey job required a considerable amount of standing, reaching, and bending, all of which increased his back pain. Whenever he did this job at night, he would lie on the floor whenever possible to soothe his back pain. ROA at 74–75. As previously noted, plaintiff worked as a waiter against his treating physician's advice. When asked why plaintiff should not work as a waiter, plaintiff's treating physician, Dr. Lambert, answered in relevant part that he could not "imagine working at a job where, when you do it, you're crippled up for two or three days after that." ROA at 67. Plaintiff testified that when he worked as a waiter, he did not lift trays of food, but instead carried a plate of food in each hand. Thus, at most, he carried objects weighing between four and five pounds, which were within the weight limit recommended by Dr. Lambert, who advised plaintiff not to lift objects weighing more than 25 pounds. ROA at 61. Plaintiff did these jobs in spite of his pain and against his doctor's advice. The Court, therefore, cannot conclude that plaintiff's "work efforts could have been comparable to those of unimpaired persons working in the same occupation in [his] community." *Jozefowicz*, 811 F.2d at 1357.

ACCORDINGLY, IT IS HEREBY ORDERED that this case be remanded to the Secretary with instructions that a hearing be held before an Administrative Law Judge for the purpose of considering this case further in a manner consistent with this opinion.

IT IS FURTHER ORDERED that the Secretary's finding that plaintiff had engaged in substantial gainful activity prior to June 1986, be, and the same hereby is, reversed.