Hazel M. CAMPBELL

v.

Jo Anne BARNHART, Commissioner of Social Security Administration

No. 1:04 CV 130.

United States District Court, E.D. Texas, Beaumont Division.

April 27, 2005.

---

Robert C. Hardy, Sr., Beaumont, TX, for Plaintiff.

. Ruben Montemayor, San Antonio, TX, for Defendant.

## *MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

COBB, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct and the Report of the United States Magistrate Judge is **ADOPTED**. A final Judgment will be entered separately, remanding this action to the Commissioner.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R. 1(H) for the Assignment of Duties to United States Magistrate Judges, and Beaumont General Order 00–02.

## I. Nature of Case

Plaintiff asks the court to review a decision of the Commissioner of Social Security Administration (Commissioner), who denied plaintiff's claim for social security disability benefits.[1] Through an Administrative Law Judge (ALJ), the Commissioner determined that although plaintiff has "severe impairments,"[2] plaintiff is not disabled because she retains "residual functional capacity"[3] for a wide range of "light work"[4] which enables her to perform her "past relevant work"[5] as accounting clerk. Because ability to perform regular previous employment is considered "substantial gainful activity,"[6] the Commissioner determined that she is ineligible for disability benefits.[7]

Here, plaintiff complains that the Commissioner ignored or impermissibly disregarded evidence from three treating physicians who are unanimous in their opinions that plaintiff is no longer able to work. Especially significant, in plaintiff's view, is that two treating physicians opined that her impairments will result in *excessive absenteeism*. Because a "vocational expert"[8] testified that a person absent from work as often as treating physicians foresee in plaintiff's case *cannot maintain employment*, plaintiff argues that the Commissioner's decision is not supported by substantial evidence.

1. Title 42 U.S.C. § 405 authorizes United States district courts to conduct judicial review of the Commissioner's final decisions regarding applications for social security benefits. 42 U.S.C. § 405 (2003).

2. The Commissioner's regulation deems an impairment to be severe when it "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2004).

3. "Residual functional capacity (RFC) is defined as 'the most you can still do despite your limitations.'" 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2004). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

4. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.... [Light work] requires a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (2004).

5. The Social Security Administration defines past relevant work: *"Work experience* means skills and abilities you have acquired through work you have done which show the type of work you may be expected to do.... We consider that your work experience applies [is relevant] when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a) (2004); see also Soc. Sec. R. 82–62 (PPS–80) (1982).

6. "Substantial work activity is work activity that involves doing significant physical or mental activities.... Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. § 404.1572(a)-(b) (2004).

7. The Social Security Act defines disability as *"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."* 42 U.S.C. § 423(d)(1)(A).

8. Vocational Experts are utilized by the ALJ to "assess whether jobs exist for a person with the claimant's precise abilities." *Gilliam v. Califano*, 620 F.2d 691, 694 (8th Cir. 1980). The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person

## II. FACTUAL BACKGROUND

At the time of her evidentiary hearing before ALJ John Jarrett, plaintiff was 60 years of age and had undergone a successful heart transplant five years earlier. Her application claimed disability because *"[t]he stress of holding down a job is very hard on [her] transplanted heart."* [9] Tr. 126. ALJ Jarrett reviewed medical evidence from all treating sources, the plaintiff, and a "medical expert" [10] retained by ALJ Jarrett. All treating physicians unanimously agreed that plaintiff's current point of debilitation is such that she can (and should) no longer work.[11] Moreover, a medical expert, Dr. Carl Beard, M.D., a cardiologist, opined that treating physician Dr. Edward K. Massin, M.D., had *"quite adequately outlined his assessment of [plaintiff's] functional limitations"* and he stated that he saw *"no real reason on the basis of the medical record to disagree with this."* Tr. 63. After considering all this evidence, ALJ Jarrett acknowledged:

> *"Given the serious nature of heart transplants in general, it would not be unreasonable to expect a patient to encounter several debilitating symptoms even years after a successful transplant. Thus, there is a medical nexus than can give some credence to the assessments offered by [treating physicians] Dr. Keller and Dr. Massin."*

Tr. 26. Nevertheless, ALJ Jarrett found the treating physicians' assessments to be *"materially inconsistent with the claimant's self described level of daily activities"* (*Id.*), and found that plaintiff has residual functional capacity for a wide range of light work, with certain limitations. ALJ Jarrett then posed a hypothetical question to the vocational expert, Kay Gilreath,[12] as to whether a person with

---

9. Plaintiff avers that Dr. O. Howard Frazier, M.D., of Texas Heart Institute in Houston, Texas, performed her heart transplant on May 13, 1998. Tr. 133.

10. A medical adviser, at the request of the Social Security Administration, reviews a claimant's medical records and then gives an expert opinion as to the extent of claimant's impairment. *See* 20 C.F.R. § 404.1527(f)(2)(iii) (2004). Social Security Ruling 96–6p designates such professional as a "medical expert" when the person functions as an expert witness rather than an adviser in the course of an administrative law judge hearing.

11. Plaintiff saw Dr. Edward K. Massin, M.D., associated with Texas Heart Institute of St. Luke's Hospital in Houston, Texas, from June, 2000, through August, 2003. Dr. Massin completed two questionnaires. In the first, Dr. Massin opined that *plaintiff's ability to function will vary from day to day, and she will be unable to work on a sustained basis for 8 hours a day and 40 hours a week.* Tr. 403. In the second, Dr. Massin opined that plaintiff *will be absent from work "20%"* (*Id.* at 432)

lives. *See Ellison v. Sullivan*, 921 F.2d 816 (8th Cir.1990).

and *"more than three times a month"* (*Id.* at 433).

Dr. Michael G. Keller, D.O., treated plaintiff at Christus St. Mary Hospital in Port Arthur, Texas, for "sustained tachycardia.... after she took a dose of cough medicine" on March 22, 2002, and he saw plaintiff twice thereafter, on April 1, 2002, and on May 9, 2003. Tr. 192. Dr. Keller opined that *plaintiff is unable to sustain work for 8 hours per day and 40 hours a week, and her impairments will cause absence from work in excess of three days per month.* Tr. 401. As grounds, Dr. Keller stated that plaintiff is *"a heart transplant [patient] decreasing available modalities."* *Id.*

Dr. Allen C. Williamson, D.O., treated plaintiff from January, 1999, through March, 2003. In a "Physician Record: Cardiovascular Follow Up," Dr. Williamson opined that plaintiff *"cannot work—much anxiety c/o back pain & r. hip pain, 1. leg pain."* Tr. 390. For "Treatment Plan," Dr. Williamson added, *"Pt. should not work—Stress exacerbates anxiety."* Tr. 391.

12. The record does not contain Ms. Gilreath's *curriculum vitae* or other summary of her qualifications.

that residual functional capacity can perform work as an accounting clerk. Responding to the specific elements of that hypothesis, VE Gilreath testified that such a person could work as an accounting clerk. Tr. 77. In cross-examination, claimant's attorney amended the hypothesis to subsume a person with expected absences of more than three times a month, VE Gilreath stated:

A One would have problems maintaining employment with that rate of absenteeism.

Q So they would not be able to maintain employment? Is that right?

A Right.

### III. DISCUSSION AND ANALYSIS

Plaintiff argues generally that ALJ Jarrett improperly weighed opinions of treating physicians.[13] The focus, however, of plaintiff's argument is more narrow. Plaintiff argues that ALJ Jarrett ignored or improperly discounted treating physician opinion on whether plaintiff can perform work duties on a *regular and continuing basis.* The court, therefore, must address two distinct issues: (1) degree of deference due a treating physician's opinion; and (2) relevance of an individual's ability to work on a sustained basis. This section gives a brief overview of both con-

cepts, then concludes with an application of relevant principles of analysis.

### A. Substantial Gainful Activity Means Sustained Work

██ Ability to engage in substantial gainful employment precludes eligibility for disability benefits. In social security parlance, substantial gainful employment contemplates employment on a regular and continuing basis. *Singletary v. Bowen,* 798 F.2d 818, 820–21 (5th Cir.1986); *White v. Heckler,* 740 F.2d 390, 395 (5th Cir. 1984); *see also* 20 C.F.R. § 404.1574(a)(1). Both 20 C.F.R. § 404.1545(b) and Soc. Sec. R. 96–8p (1996) set forth the general rule that determining a claimant's residual functional capacity requires consideration of whether a claimant is able to perform work duties on a continuous basis.[14] Hence, a valid residual functional capacity finding must be based on this overarching principle.

██ Generally, there is no requirement that an ALJ make an explicit "regular and continuing basis" finding absent evidence of a waxing and waning nature of the claimant's symptoms, such that the impairments interfere with the claimant's ability to maintain employment on a continuing basis. *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986) (mental impair-

---

**13.** Verbatim, plaintiff's point of error is as follows:

"Whether the finding that the plaintiff can do her past relevant work as an accounting clerk is supported by substantial evidence when the administrative law judge ignored or improperly discounted the opinion of three treating sources that the plaintiff is unable to maintain employment because she would be absent from work more than three days a month and the vocational expert testified that absences of that frequency would preclude competitive employment."

Pl.'s Br. at "Statement of the Issue."

**14.** Social Security regulations provide:

When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity *on a regular and continuing basis.* 20 C.F.R. § 404.1545(b) (2004)(italics added).

Soc. Sec. R. 96–8p (1996) provides:
Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting *on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.* (italics added)

ments); *Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002) (physical impairments); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003) (holding it is a claimant's responsibility to first establish waxing and waning of symptoms). Moreover, when the record contains no evidence that claimant's ability to *maintain* employment is compromised, an ALJ's mere citation to the appropriate regulation and ruling permits the court to infer that the ALJ determined that the claimant could perform the work in question on a regular and continuing basis. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir.2003).

## B. Deference to Treating Physician Opinion

▬▬ Both the Commissioner's regulations and governing circuit precedent presuppose that a treating physician's *medical* opinion is entitled to great deference.[15] However, treating physicians' opinions regarding medical issues may be rejected or discounted for *good cause*.[16] Good cause may exist when the physician's statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over back-wards to support the application for

disability benefits." *See Myers*, 238 F.3d at 621; *Newton v. Apfel*, 209 F.3d at 455–56; *Greenspan*, 38 F.3d at 237; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990); *Scott v. Heckler*, 770 F.2d at 485. A treating physician's statements may be rejected also when the record contains contradictory opinions from other treating physicians. *See Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir.1986).

Finally, when an ALJ determines that a treating physician's opinion is not entitled to controlling weight, the Commissioner prescribes a six-factor analysis for determining what weight to give that physician's medical opinions. Those factors are:

1. Examining relationship;
2. Treatment relationship, specifically
   a. Length of treatment relationship and frequency of examination,
   b. Nature and extent of treatment relationship;
3. Supportability;
4. Consistency;
5. Specialization; and
6. Other factors brought to the adjudicator's attention.

20 C.F.R. §§ 404.1527(d), 416.927(d)(2004).

## C. Application

▬▬ ALJ Jarrett did not make an express finding that plaintiff has residual

---

**15.** *See* 20 C.F.R. § 404.1527(d)(2) (2004); SSR 96–2p, 61 F.R. 34490, 34491 (July 2, 1996); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985) (citing *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984)); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994) (internal citations omitted)); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d at 566.

**16.** *Leggett v. Chater*, 67 F.3d at 566.

The Commissioner prescribes a six-factor analysis for determining what weight to give a treating physician's *medical* opinions when they do not receive controlling weight. *See*

Regulation 20 C.F.R. §§ 404.1527(d); 416.927(d)(2004). Social Security Ruling 96–5p directs claims adjudicators considering a treating physician's opinion on an *ultimate issue reserved for the Commissioner* to apply the same factors which regulations require to be applied when weighing *medical* opinions. Consequently, an ALJ may never completely ignore a treating physician opinion, even when that opinion goes to the ultimate issue of disability. *Welsh v. Barnhart*, 2002 WL 32073076, at *10 (E.D.Tex. Dec. 23, 2002).

This report does not discuss the six-factor analysis because plaintiff assigns no error in the application of the cited regulation or ruling.

functional capacity to perform light work on a regular and continuing basis. He cited the regulation (20 C.F.R. § 404.1545(b)(2004)) and ruling (Soc. Sec. R. 96–8p (1996)) which require assessment of an individual's ability for sustained work-related physical and mental activities in a work setting. However, this is not an instance in which mere citation to the applicable standard permits the court to infer that ALJ Jarrett found that plaintiff has the capacity for sustained work. Treating cardiologist Dr. Edward Massin, M.D., provided evidence that plaintiff's ability to function *varies from day to day,* and that she is unable to work on a *sustained basis* for 8 hours a day and 40 hours a week. *See* n. 11, supra. This is "waxing and waning" evidence that triggers an affirmative legal duty to make an express finding of ability to work on a regular and continuing basis. *See Singletary v. Bowen,* and progeny through *Dunbar v. Barnhart,* above. Hence, there is a facial error in ALJ Jarrett's decision.

The court cannot disregard this error as harmless. ALJ Jarrett committed a second error by failing to conduct the six-factor analysis to determine how much weight to afford treating physician opinion. Had ALJ Jarrett complied with that legal duty, he likely would have found that some of the six factors (e.g., specialization, treatment relationship, consistency with other physician opinion) favored giving the treating physicians' opinion great weight. Other factors (e.g., supportability, other information brought to his attention) might suggest giving those opinions lesser weight. The court cannot say for certain how ALJ Jarrett or another administrative law judge might rank those factors. Since the court itself does not have the prerogative to weigh those factors de novo, this action must be remanded to the Commissioner for that purpose.[17]

## IV. RECOMMENDATION

The Commissioner's decision should be reversed, and the action remanded with instructions that the Commissioner weigh treating physician opinion regarding plaintiff's inability to work on a regular and continuous basis in accordance with 20 C.F.R. §§ 404.1527(d), 416.927(d) (2003).

## V. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

■ A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v.*

---

**17.** If upon remand the Commissioner again denies plaintiff's application, it would be helpful to the court in any subsequent action for judicial review if the Commissioner's decision articulates plausible reasons for rejecting treating physician opinion that plaintiff's impairments will generate excessive absenteeism. ALJ Jarrett's original decision cited plaintiff's daily activities (driving, riding a bicycle, household chores, taking care of an elderly parent) and certain medical evidence (heart ejection fraction of 65%, normal blood pressure, normal left ventricular size) as reasons for rejecting wholesale treating physicians' opinions regarding extent of plaintiff's debilitation. Tr. 26. While this cited evidence arguably supports a decision to reject treating physician opinion that cannot work on any given *day,* it is not self-evident how it addresses capacity for working *five days a week, eight hours a day, on a regular and continuing basis.*

*United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

April 8, 2005.