Arthur K. MOORE, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary, of Health and Human Services, Defendant–Appellee.

No. 89–4948
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1990.

Terrell D. Fowler, Cox, Cox, Townsley & Fowler, Lake Charles, La., for plaintiff-appellant.

Rodney A. Johnson, Health and Human Services, Karen J. Sharp, Dallas, Tex., Joseph S. Cage, Jr., U.S. Atty., Josette Cassiere, Asst. U.S. Atty., Shreveport, La., for defendant-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

**PER CURIAM:**

Arthur K. Moore appeals the district court's judgment denying him disability benefits under 42 U.S.C. § 423. Moore argues that the district court erred in holding that there is substantial evidence to support the Secretary's determination that he is not disabled. We affirm.

I

On March 15, 1987, Moore suffered an apparent heart attack at about the age of fifty-three. He was diagnosed with coronary ischemia and on March 25, he underwent a triple coronary artery bypass operation. The operation was performed by Dr. John DiGiglia, who noted that Moore's "post-operative course was essentially uneventful."

On June 5, 1987, Moore underwent a stress test, administered by Dr. Michael C. Turner, his cardiologist at the time of his surgery, which showed that he had "normal exercise capacity." On August 1, when Moore attempted to return to his job as a welder, however, he experienced chest pains and quit after working only half a day. On August 27, he filed his claim for disability benefits. On October 21, 1987, Moore was examined by Dr. John H. Sabatier at the request of the Social Security Administration. Dr. Sabatier noted that Moore's electrocardiogram was normal, and he experienced "no true angina." Sabatier, however, stated that Moore has "suspected vascular disease involving at least the right upper extremity ..." and was unable to rule out the possibility of a right carotid bruit; additionally, he noted that Moore was suffering from "moderately severe anxiety depressive symptomatology."

On November 3, 1987, Moore was again admitted to the hospital complaining of chest pain and numbness and tingling in his left arm and leg. Dr. H.B. Lovejoy, his family physician, diagnosed him as having a right carotid aneurysm. On November 5, 1987, Dr. Lovejoy concluded from a stress test he performed on Moore that the plaintiff suffered from a slight limitation of his left ventricular function. On November 9,

1987, Drs. A.K. Seale and Walter Ledet operated on Moore to remove the aneurysm. Dr. Ledet noted that Moore did "quite well" after the surgery.

On November 22, 1987, Moore went to a hospital emergency room complaining of severe headaches, cervical pain, and numbness and tingling in his left arm and leg. An x-ray revealed "some minimal degenerative disc disease." Dr. Ledet diagnosed him as having a transischemic attack and sought to rule out the possibility of a cervical cord compression. He discharged Moore on November 25, 1987.

On January 5, 1988, Dr. Seale noted that "numerous evaluations" of Moore concerning his complaints of "headaches associated with different types of pain both in the chest, and left arm, and the left leg" had "failed to come up with any significant physical findings." Additionally, extensive x-rays had "failed to show any significant abnormalities." Dr. Seale noted, however, that Dr. Lovejoy "has seen [Moore] regarding his chest pain and has done treadmill EKGs ..." and could be referred to concerning his "myocardial status."

On January 19, 1988, Dr. Lovejoy noted that he had last seen Moore on December 8, 1987, at which time Moore complained of numbness, tingling, and loss of strength in his left hand. An MRI, however, had "failed to reveal any significant abnormality." Lovejoy reviewed the results of Moore's stress test on November 5, 1987, concluding that Moore "likely ... has failure of the left ventricular function and therefore is unable to exercise." He observed further that Moore "still seems to me to be unable to work."

On June 13, 1988, Dr. DiGiglia noted that Moore "should not have any long-term disability from his surgical procedure" but referred questions concerning Moore's "possible disability from his status post-myocardial infarction and generalized hardening of the arteries" to Dr. Michael C. Turner. On June 16, 1988, Lovejoy noted that, like Dr. Seale, he was unable to explain Moore's complaints of numbness and tingling and loss of strength in his left hand and that an MRI had revealed no

significant abnormalities in the brain." Lovejoy recommended further evaluation of Moore's ailments, but stated that, in his opinion, Moore was unable to work "because of a combination of problems including his coronary bypass surgery and his undiagnosed left arm and left leg numbness."

On August 12, 1988, Dr. G.R. Morin, a psychiatrist, diagnosed Moore as suffering from a "[d]epressive reaction, mild to moderate." He noted that Moore suffered "no impairment in his ability to relate to others ... no constriction of his interests ... and no deterioration in his personal habits."

At the hearing before the ALJ on July 20, 1988, Moore stated that he was told by his doctors not to lift more than ten pounds. He also indicated that he occasionally went fishing with friends, drove to the store to pick up groceries, and walked outside.

On October 5, 1988, the ALJ concluded that Rules 202.10 and 202.11 of the Appendix 2 of the Secretary's regulations directed a finding that Moore was not disabled. On February 23, 1989, the Appeals Council declined to review the decision of the ALJ.

On March 6, 1989, Moore filed suit against the Secretary in district court. Both parties filed motions for summary judgment and memoranda in support of these motions. On September 29, 1989, a magistrate recommended that the district court hold that Moore was not disabled. On November 22, 1989, the district court adopted the findings and recommendations of the magistrate and entered judgment for the Secretary. Moore timely appealed.

## II

■ On appeal, Moore argues that the ALJ's decision that he was not disabled is unsupported by substantial evidence. He argues that the medical evidence indicates that he is disabled and, thus, the Secretary failed to prove the contrary.

The Social Security Act defines "disability" as "inability to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental im-

pairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). A physical or mental impairment is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Regulations set forth by the Secretary provide that disability claims should be evaluated according to a sequential five-step process. 20 C.F.R. § 404.1520 (1986). Step five of that process is at issue in this case. Under step five, once a claimant has proved he is unable to perform his past work because of a severe impairment, in order to establish disability the Secretary must prove that the claimant is nevertheless able to perform other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Herron v. Bowen*, 788 F.2d 1127, 1131 (5th Cir.1986). This determination requires consideration of the claimant's residual functional capacity, age, education, and past work experience and the application of the Medical–Vocational Guidelines. Section 404.1520(f)(1).

After reviewing the medical evidence in this case, the ALJ concluded that, although Moore suffered a severe impairment resulting from heart disease and degenerative disc disease and was, therefore, unable to return to his work as a welder, he was capable of performing "light work." Pursuant to the Social Security Administration's regulations, the ALJ then applied the Medical–Vocational Guidelines. Under Rules 202.10 and 202.11 of the guidelines, a claimant with Moore's profile (fifty-three years of age at the time he filed his claim, sixth grade education, and unskilled or semi-skilled but with nontransferable skills), who is capable of performing light work is to be adjudged not disabled.

■ We review the ALJ's decision to determine whether it is "supported by substantial evidence and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990). We have held that "[s]ubstantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983). Although we must review the entire record, we may not reweigh the evidence or substitute our judgment for the Secretary's. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir.1988).

Applying this standard, we hold that there is substantial evidence in the record to support the ALJ's determination that Moore was capable of doing light work.[1] In his Bruce protocol stress test that was administered by Dr. Turner, a cardiologist, on June 5, 1987, less than three months after his coronary bypass surgery, Moore achieved 10.1 METs, a rate we have held is "more than enough" for the performance of light work.[2] *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir.1988). At his hearing before the ALJ, Moore further attested to his capacity to perform light work, stating that he occasionally went fishing with friends, drove to the store to pick up groceries, and walked outside; he also confirmed that he was not restricted by his doctors from lifting up to ten pounds.[3]

---

**1.** Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

**2.** An individual who achieves greater than nine METs is theoretically capable of carrying objects in excess of ninety pounds and performing the work of a lumberjack and heavy laborer. *See Cardiac Rehabilitation*, ed. by Louis R. Amundsen p. 26 (1981).

**3.** According to Moore, the restrictions imposed upon him by his doctors constantly changed. In his Disability Report, which he signed on August 27, 1987, Moore stated that he was told by his doctors not to do any straining or lifting. In his Reconsideration Disability Report, how-

To be sure, as Moore argues, Dr. H.B. Lovejoy, one of his treating physicians, stated that he believed Moore was "unable to work"; he based this opinion, in part, on a stress test he administered to Moore on November 5, 1987. We have held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). Yet, the ALJ has sole responsibility for determining a claimant's disability status. In doing so, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Scott*, 770 F.2d at 485. Generally, a specialist's opinion is to be accorded greater weight than a non-specialist's opinion. *Dorsey v. Heckler*, 702 F.2d 597, 603 (5th Cir.1983).

In his opinion, the ALJ duly noted that Dr. Lovejoy, a general physician whose specialties include occupational and internal medicine, stated that in his opinion Moore was unable to work "because of a combination of problems including coronary bypass surgery and his undiagnosed left arm and left leg numbness." Dr. Lovejoy did not explain whether he was referring to Moore's previous work as a welder or just any work generally. The ALJ specifically weighed Dr. Lovejoy's general opinion against the opinions and diagnoses of two specialists, Dr. DiGiglia, the cardiovascular surgeon who performed Moore's coronary bypass operation, and Dr. A.K. Seale, the general surgeon who removed Moore's carotid aneurysm. Dr. DiGiglia stated that Moore should not have any long-term disability from his coronary bypass operation; Dr. Seale noted that, after "numerous evaluations," neither he nor Dr. J.F. Raggio, a neurosurgeon, was able to explain Moore's complaints of headaches associated with chest pain and left arm and left leg numbness. Although it is true that the ALJ does not address the stress test administered by Dr. Lovejoy, the stress test administered by Dr. Turner, the cardiologist, only five months earlier is strong evidence that Moore was able to perform not only light work, but his regular work as a welder. After evaluating the foregoing evidence, the ALJ concluded that Moore was capable of performing light work. As indicated, we may not substitute our judgment for that of the Secretary's.[4]

We, therefore, conclude that under the appropriate standard of review, substantial evidence supports the Secretary's decision; that is, a reasonable mind could accept from the record as a whole that Moore was capable of performing light work.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

ever, which he signed on December 1, 1987, Moore stated that he was restricted by his doctors from lifting more than five pounds. As indicated, before the ALJ, Moore stated that he was restricted from lifting more than ten pounds. The medical reports of Moore's doctors, however, fail to indicate that they imposed any such restrictions on Moore's activities. Rather, Dr. DiGiglia stated that in May 1987, following Moore's coronary bypass surgery, he told the claimant to "increase his activities." Additionally, Dr. Seale stated that, upon Moore's discharge from the hospital following the surgery to remove the carotid aneurysm, he was "given routine instructions regarding diet, activity, and at-home care."

4. Moreover, we note that the weight of Dr. Lovejoy's opinion concerning Moore's inability to work was minimized by his statement in his final report on June 16, 1988, that "further evaluation" was necessary to determine the cause of Moore's complaints of headaches and chest pain.