Lionel WILTZ

v.

## COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION

No. 1:04 CV 484.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 20, 2005.

---

Donald E. Sample, Beaumont, TX, for Plaintiff.

Steven A. Ford, Beaumont, TX, for Defendant.

### *MEMORANDUM ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

HEARTFIELD, District Judge.

The court referred this matter to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The magistrate judge submitted a Report and Recommendation, which recommends that the decision of the Commissioner be affirmed.

Plaintiff filed objections to the magistrate judge's Report and Recommendation. The court has conducted a *de novo* review of the objections in relation to the pleadings and the applicable law. *See* FED. R. CIV. P. 72(b). The magistrate judge incorrectly stated that the Commissioner received new evidence from an examining physician following remand. Therefore, plaintiff's objection with respect to that misstatement is sustained. However, the magistrate judge's recommendation remains correct. Even absent new evidence from any source, the administrative law judge in this case was free to re-examine the existing evidence and reach new conclusions. After careful consideration, the court concludes the remaining objections are without merit.

### *ORDER*

Accordingly, plaintiff's objection that the magistrate judge incorrectly stated that the Commissioner received new evidence from an examining physician is **SUSTAINED.** All other objections are

**OVERRULED.** The findings of fact and conclusions of law of the magistrate judge are correct, and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered in this case in accordance with the magistrate judge's recommendation.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

Plaintiff, Lionel Wiltz, seeks judicial review and reversal of the Commissioner of Social Security Administration's ("SSA")decision denying his application for Supplemental Security Income benefits.[1]

### I. INTRODUCTION

At first glance, this appears to be a familiar judicial-review action under Section 405(g) of the Social Security Act. However, it is not routine. Mr. Wiltz's application has been pending now for well over *nine years* without a final decision! During this extended period, it has occupied three spots on this court's docket.[2] The court remanded it twice, both times at the Commissioner's request. The first remand was for the purpose of permitting the Commissioner to obtain expert vocational testimony. The second remand was for the purpose of allowing the Commissioner additional time to locate the missing administrative record. Unfortunately, the case languished even further. After the Commissioner located the record and filed an answer, the administrative transcript supplied to the court was incomplete. The

court entered an order requiring correction of that deficiency. Ultimately, the matter did not become ripe for review until almost two and a half years after plaintiff appealed the Commissioner's *second* decision. To further complicate matters, the district judge to whom the matter was assigned is now deceased, requiring the case to be reassigned to another district judge who has no familiarity with the case.

Borrowing from modern political vernacular, Mr. Wiltz and the Commissioner now "deserve an up or down vote." That is, the court should either affirm the Commissioner's decision or reverse it and award benefits. Interests of justice require finality at this point. Finality would not be within grasp if the court were to remand yet again for further consideration.

### II. PROCEEDINGS

█ Mr. Wiltz's July, 1996, application alleged disability arising from cardiac complications. His application was denied when Administrative Law Judge (ALJ) Ann Azdell determined that plaintiff has residual functional capacity for "a limited range of 'light' work and a full range of 'sedentary' work, and could perform a significant number of jobs available in the national economy." Tr. 14. After the court remanded the action at the Commissioner's request, another ALJ, Gerald L. Meyer, reconsidered the matter. ALJ Meyer conducted a second evidentiary hearing at which plaintiff, represented by counsel, appeared and testified. In addition, ALJ Williams received additional and

---

1. This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges. It was

referred originally by Beaumont General Order 98–6, which was superseded by General Order 05–6 on February 22, 2005.

2. In addition to the present action, see *Wiltz v. Secretary HHS*, No. 1:00cv432 (E.D.Tex. November 15, 2001) and *Wiltz v. Commissioner*, No. 1:03cv76 (E.D.Tex. July 30, 2004).

updated medical evidence—including treating physician and examining physician[3] opinions—and testimony of a vocational expert[4] (VE) Kay Gilreath.[5]

ALJ Meyer then issued a fresh decision. Tr. 223–234. Using a five-step sequential analysis prescribed by regulation and approved by courts,[6] he concluded that plaintiff proved a prima facie case of disability by showing that he has severe impairments[7] that preclude him from performing past relevant work. However, he found that plaintiff nevertheless retains residual functional capacity (RFC) to perform a limited range of light work.[8] Tr. 231. Further, and relying on VE Gilreath's testimony, ALJ Williams found that plaintiff can perform alternative light work as counter salesman, small products assembler, and retail marker, all of which exist in significant numbers in the national economy. Tr. 233, Finding 11. ALJ Meyer therefore concluded that plaintiff *"was not under a 'disability' as defined in the Social Security Act, at any time through the date of this decision."* Id., Finding 12.

### III. POINTS OF ERROR

ALJ Meyer and the original ALJ, Ann Azdell, both denied plaintiff's application. However, their reasoning and deliberations differed. The principal differences between their respective approaches are:

- ALJ Meyer rejected a treating physician's opinion (evidence not before the original judge) that plaintiff is totally and permanently disabled;

- ALJ Meyer found that plaintiff's "residual functional capacity" for work is greater, i.e., at a higher exertional level, than was found in the original proceeding;[9]

3. An examining physician is a physician who has performed at least one discrete individual examination of the plaintiff. Generally, the Commissioner gives more weight to the opinion of a source who has examined the plaintiff rather than the opinion of a source who has not performed such an examination. *See* 20 C.F.R. § 416.927(d)(1) (2005).

4. Vocational Experts are utilized by the ALJ to determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 416.966(e) (2005). The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *See Ellison v. Sullivan,* 921 F.2d 816, 821 (8th Cir.1990).

5. Ms. Gilreath has "sixteen years experience in vocational rehabilitation counseling and case management." Tr. 282. She has worked as a vocational rehabilitation counselor for Alfred and Vasquez, Inc., in Houston, Texas, since 1994. *Id.*

6. *See* 20 C.F.R. § 416.920 (2005); *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

7. ALJ Meyer found the following impairments to be severe: "hypertension, status post stroke with bypass and valve replacement and coronary artery disease." Tr. 228.

8. ALJ Meyer determined plaintiff's limitations to be standing/walking/sitting for not more than 6 hours in an 8–hour day; lifting/carrying 20 pounds occasionally and 10 pounds frequently; occasionally climbing stairs, stooping, kneeling, and crouching. He determined that plaintiff must never be required to crawl or climb rope, ladder, or scaffolding; and plaintiff must never be exposed to unprotected heights, dangerous machinery, temperature extremes, or outside work. Tr. 231.

9. ALJ Azdell found plaintiff capable of "standing and walking for 2 hours, sitting for 6–8 hours, lifting and carrying 30 pounds occasionally and 20 pounds frequently and occasionally stooping, crouching, and kneeling.

• ALJ Meyer relied on expert vocational testimony instead of Medical–Vocational Guidelines[10] to determine whether alternative jobs that plaintiff can perform exist in significant numbers in the national economy; and

• ALJ Meyer accepted expert vocational testimony that plaintiff has prior vocational skills as an auto mechanic which can transfer to an alternative job as counter salesman.

Plaintiff challenges each variation with no less than *twelve* discrete points of error.[11] However, once these scattergun points and arguments are sifted and sorted, they coalesce into only four analytical points:

1.  Did ALJ Meyer commit legal error by *failing to give treating physician opinion controlling weight,* or, alternatively, by *not weighing treating physician and other medical opinions against specific criteria specified by regulations?*

2.  Did ALJ Meyer commit legal error by *finding an increased residual functional capacity upon remand without receiving new and expert medical evidence* to support the finding?

---

He can never climb, balance, crawl, or work around heights, moving machinery, or temperature extremes." Tr. 15.

See n. 8, *supra* p. 4, for ALJ Meyer's findings.

10.  The Medical–Vocational Guidelines consist of four tables (for sedentary, light, medium, and heavy work) which may be consulted *following a determination of claimant's residual* functional capacity. The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201–04 (2005).

11.  Plaintiff's points of error:

"A.  The Commissioner did not apply proper legal principles because under the regulations:
  1.  The treating doctor's opinion should have been given controlling weight in determining plaintiff's claim.
  2.  If not entitled to be given controlling weight, the treating doctor's opinion *should have been given considerable or* great weight.
B.  The Commissioner failed to apply the six-factor regulatory standards in determining the weight to give the treating physician's opinion after the Commissioner determined that the opinion would not be accorded controlling weight, and failed to discuss the application of those factors.
C.  The Commissioner did not apply proper legal principles because the regulations call for a finding of disability in view of the fact that plaintiff cannot read or write, and his prior work was unskilled, and that he had no skills transferable to other work. . . .
  1.  The evidence does not support the vocational advisor's testimony that plaintiff engaged in prior relevant work as an auto mechanic.
  2.  Substantial evidence does not support the Administrative Law Judge's finding that plaintiff acquired skills performing skilled work.
D.  The Commissioner erred when the Administrative Law Judge, without medical expert testimony to support new findings, increased the plaintiff's residual functional capacity from prior decisions.
E.  The Commissioner's decision is not supported by substantial evidence because the hypothetical question assumes that the plaintiff can perform a full or wide range of light work, but prior findings stated that he could perform only a limited range of work, and there is no medical testimony to justify the change in findings.
F.  The Commissioner's decision is not supported by substantial evidence because:
  1.  The hypothetical question did not comprehensively describe plaintiff's limitations.
  2.  The evidence does not support the vocational advisor's testimony that plaintiff engaged in prior relevant work as an auto mechanic.
  3.  Transferable skills were not identified, and some jobs listed were unskilled work, so by definition, skills could not transfer to such work."
Pl.'s Br. at "Statement of the Issues."

3. Did ALJ Meyer commit legal error by *relying on expert vocational testimony instead of Medical–Vocational Guidelines* when determining whether there exists alternative available work that plaintiff can perform?

4. Is ALJ Meyer's decision not supported by *substantial evidence* because it relies on vocational testimony given in response to a *defective hypothetical question?*

## IV. Discussion and Analysis

### A. Evaluation of Treating Physician and other Medical Opinions

■ The treating physician at issue, Dr. A.C. Walkes, M.D., opined in February and again in July, 2002, that plaintiff is totally and permanently disabled. Tr. 397, 437. Because these opinions relate to *ultimate issues governing entitlement to benefits,* they were entitled to no special significance. *See* 20 C.F.R. § 416.927(e)(1); *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir.2003). The Social Security definition of disability is a term of art regarding which medical doctors have no special expertise, and the issue of disability is one reserved exclusively to the Commissioner. Consequently, ALJ Meyer did not err in rejecting Dr. Walkes's ultimate issue opinions.

■ Dr. Walkes's opinion of *medical issues,* however, ordinarily is entitled to controlling weight. *See* 20 C.F.R. § 416.927(d); SSR 96–2p, 61 F.R. 34490, 34491 (July 2, 1996); *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985) (citing *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984)); *see also Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001) (citing *Green-*span v. *Shalala,* 38 F.3d 232, 237 (5th Cir.1994) (internal citations omitted)); *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000); *Leggett,* 67 F.3d 558, 566 (5th Cir.1995). Medical opinion relates to the nature and severity of a patient's impairment. Treating physician medical opinion may be rejected or discounted only for good cause, examples of which appear in the note.[12]

■ The only treating-physician medical opinions arguably rejected by ALJ Meyer are Dr. Walkes's opinions that (1) plaintiff's degenerative joint disease, chronic sinusitis and hepatitis B cirrhosis, and gastro-esophageal reflux disease are so severe as to contribute to disability (Tr. 397); and (2) plaintiff's hypertension, valvular heart disease, and coronary disease are so severe as to "impair his functional capacity to an extreme degree." (Tr. 437). ALJ Meyer stated expressly that he rejected them because they were inconsistent with the record as a whole. Inconsistency with the record as a whole constitutes good cause, and ALJ Meyer acted within his sound discretion in reaching that conclusion. Plaintiff's subjective back pain was not sufficiently severe for Dr. Walkes to order x-rays. Although Dr. Walkes's clinic notes indicate that he treated plaintiff for sinusitis, hepatitis B cirrhosis, and gastro-esophageal reflux disease, no clinical or other evidence indicates that those conditions are severe impairments. *See* Tr. 389, 392, 394, 406. Regarding plaintiff's cardiac and vascular-related impairments, ALJ Meyer correctly observed that examining physicians' opinions conflicted with those of Dr. Walkes when they found "no evidence of decompensated cardiac problems,

---

12. Good cause may exist when the physician's statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over backwards to support the application for disability benefits." *See Myers,* 238 F.3d at 621; *Newton,* 209 F.3d at 455–56; *Greenspan,* 38 F.3d at 237; *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990); *Scott,* 770 F.2d at 485.

congestive heart failure and no peripheral edema" and "normal muscle bulk, no evidence of joint swelling or inflammation and no motor or sensory deficits" and intact intellectual capacity, and unimpaired recent and remote memories. Tr. 228–29. Thus, ALJ Meyer had good cause for rejecting treating-physician medical opinion as *controlling.*

Even though treating-physician opinion may not bind an ALJ, regulations require, that all opinions from medical sources—whether relating to an ultimate issue or nature and severity of impairments—be *considered* and weighed against six factors identified in Regulation 20 C.F. R. § 416.927(d). Those factors are:

1. Examining relationship;
2. Treatment relationship, specifically
   a. Length of treatment relationship and frequency of examination,
   b. Nature and extent of treatment relationship;
3. Supportability;
4. Consistency;
5. Specialization; and
6. Other factors brought to the adjudicator's attention.

20 C.F.R. § 416.927(d) (2005). This regulation requires only that the adjudicator "consider" the factors. Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form. Thus, mindful of a general duty of deference to the Commissioner's decisions, reviewing courts should examine the substance of an ALJ's decision, rather than its form.

■ First, ALJ Meyer cited the governing regulation, thus indicating his familiarity with it and intent to apply it. Tr. 229.

Next, ALJ Meyer identified Dr. Walkes as a treating physician, thereby addressing factors 1 and 2. Tr. 228, 229. He determined that Dr. Walkes's opinions were not supported by or consistent with other medical evidence of record (factors 3 and 4). He did not discuss, nor does the record indicate, Dr. Walkes's specialization (factor 5). Although plaintiff argues that routine monitoring of coumadin [13] therapy at University of Texas Medical Branch in Galveston, Texas (UTMB) presented a special factor (factor 6) which ALJ Meyer should have considered, nothing in the record from UTMB indicates that ALJ Meyer would have weighed Dr. Walkes's opinion differently had he specifically discussed coumadin therapy. Therefore, a fair reading of his decision indicates that he considered all relevant regulatory factors when weighing Dr. Walkes's opinion.

■ As for other medical source opinions, ALJ Meyer identified both Dr. Zuzukin and Dr. Siy as physicians who examined plaintiff "at the request of the state agency" (factors 1 and 2). Tr. 228, 229. In considering their opinions, ALJ Meyer compared medical records from UTMB which were consistent with and supportive of Drs. Zuzukin's and Siy's opinions (factors 3 and 4). ALJ Meyer did not identify specializations of Dr. Zuzukin and Dr. Siy, nor does the record (factor 5). The record does not indicate any special factors were raised for ALJ Meyer to consider (factor 6). Again, ALJ Meyer's decision indicates that he considered all relevant regulatory factors.

In sum, there was no legal error in ALJ Meyer's evaluation of medical opinion. He appropriately disregarded the treating physician's ultimate issue opinion; he ex-

---

13. Coumadin is a trademark for preparations of warfarin sodium. *Dorland's Illustrated Medical Dictionary,* 29th Ed. It is used to prevent harmful blood clots in patients whose history includes irregular heart rhythm, heart valve replacement, heart attack, or stroke. Available at http://my.webmd.com/drugs (November 17, 2005).

pressed good cause for not giving the treating physician's medical opinion controlling weight; and his decision reflects consideration of all regulatory factors prescribed for weighing medical source opinion. Plaintiff's points regarding ALJ Meyer's evaluation of medical opinion do not merit relief.

### B. Finding Greater Residual Functional Capacity on Remand

■ As mentioned earlier, ALJ Meyer found that plaintiff has a higher residual functional capacity for work than did ALJ Azdell in the original proceeding.[14] Plaintiff argues that this is a *per se* legal error absent expert medical testimony to support new findings. Plaintiff cites no authority for this asserted error, but urges the court to consider this circumstance as equivalent to a medical improvement case. Pl.'s Br. At p. 28–29. In a medical improvement case, a claimant who was previously found eligible for disability benefits may be disqualified due to "medical improvement." In such cases, the Commissioner bears the burden of proving that the claimant is no longer entitled to benefits.

The "medical improvement standard" applies only to those cases in which a claimant has been found eligible for benefits. 20 C.F.R. 416.994 (2005); SSR 02–1p; *Griego v. Sullivan*, 940 F.2d 942, 943–44 (5th Cir.1991). It is inapplicable here because plaintiff has never been found eligible for disability benefits. Plaintiff cites no authority for placing the burden upon the Commissioner to prove that plaintiff's RFC has improved since an earlier determination.

Plaintiff's point might be more effectively argued under the "law of the case doctrine."[15] There is authority, albeit from another circuit, for application of that doctrine in social security matters. See, e.g., *Key v. Sullivan*, 925 F.2d 1056, 1060–1061 (7th Cir.1991). Plaintiff might have an arguable point had *this court* earlier approved the original ALJ's residual lesser functional capacity finding, and ordered a limited remand for an unrelated purpose. However, such is not the case. Both earlier remands were ordered before the court acted on the merits of any administrative finding and only at the Commissioner's request.

Absent law-of-the-case implications, regulations permit consideration of all issues relating to the claim when a federal court remands a case to the Commissioner, and in turn the Appeals Council remands the case for rehearing by an ALJ:

> "*Any issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.*"

20 C.F.R. § 416.1483 (2005). Case law is in accord:

> "*When the Secretary remands cases for re-determination, there is no rule of issue preclusion.*"

*Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991).

■ In the present case, after this court's first remand,[16] the Appeals Council "vacate[d] the final decision of the Commissioner in this case and remand[ed] the case to an Administrative Law Judge for further proceedings." Tr. 275. Under

---

**14.** See notes 8 and 9, *supra*, p. 4 and p. 5.

**15.** Generally, "law of the case" is a doctrine holding that a decision rendered in a former appeal of a case is binding in a later appeal. *Black's Law Dictionary* 903 (8th ed.2004).

**16.** See *Wiltz v. Secretary HHS*, No. 1:00cv432 (E.D.Tex. November 15, 2001), Docket No. 16, 17.

prevailing case law and by regulation, the Appeals Council's remand permitted ALJ Meyer to reconsider all issues relevant to the instant claim, including plaintiff's RFC. ALJ Meyer therefore committed no error when he redetermined plaintiff's RFC and reached his own conclusion.

## C. Reliance on Vocational Testimony vs. Medical Vocational Guidelines

██ This section addresses plaintiff's multi-faceted point of error "C" ( See note 11, supra at p. 6.), wherein plaintiff asserts that ALJ Meyer committed a legal error because, according to plaintiff, governing *"regulations call for a finding of disability in view of the fact that plaintiff cannot read or write, and his prior work was unskilled, and that he had no skills transferable to other work."* To understand this point, one must recall that when—as here—an applicant proves a prima facie case of disability, the burden shifts to the Commissioner to show that there is alternative available employment that the claimant can perform. Generally, the Commissioner can satisfy this burden in one of two ways. In some instances, the Commissioner can take administrative notice of the availability *vel non* of available alternative work by consulting Medical–Vocational Guidelines, commonly referred to as "the Grids." [17] Otherwise, the Commissioner ordinarily must rely on expert vocational testimony.

██ Plaintiff's counsel argues that the grids, specifically Rule 202.09, take administrative notice that there is no alternative available work, thus mandating a finding of "disabled," for individuals with residual functional capacity for *light work*, whose age is *"closely approaching advanced age"*,

whose educational level is *illiterate*, and whose previous work experience is *unskilled*. Plaintiff argues that he satisfies all these criteria. Therefore, Rule 202.09 would and should have been applied. However, plaintiff further argues that ALJ Meyer failed to apply the rule because he accepted erroneous vocational testimony that plaintiff's prior relevant work was that of a *skilled* auto mechanic.

The court must reject this point for other reasons. An ALJ may apply the grids only (1) when a claimant's impairments are *exertional* (20 C.F.R. § 416.969a(b) (2005)); or (2) when *non-exertional* impairments do not *significantly affect* the claimant's RFC (*see* 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 200.00(a) (2005); *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000)). Consequently, for the grids to govern in the presence of a non-exertional impairment, an ALJ must first conclude that a claimant can perform *substantially all* of the activities in a given category ( e.g., light work) of exertional requirements. See *Carter v. Heckler,* 712 F.2d 137, 142 (5th Cir.1983). Here, plaintiff has nonexertional impairments,[18] but his residual functional capacity is only for a *limited* range of light work. Thus, the grids are inapplicable.

Second, it is not indisputably clear that plaintiff satisfies the illiteracy requirement. While he testified before ALJ Meyer that he cannot read or write (Tr. 240), he originally testified before ALJ Azdell that he completed the 12th grade (Tr. 24). Therefore, for reasons expressed in this and the foregoing paragraph, the court cannot conclude that ALJ Meyer erred by failing to rely on the grids to determine

---

**17.** For a brief description of the grids, see note 10, *supra,* p. 5.

**18.** Inability to crawl, balance, and climb ropes, ladders, scaffolding, or work at unpro-

tected heights or dangerous machinery; or tolerate temperature extremes or outdoor work. Tr. 231.

whether there exists alternative available work that plaintiff can perform even if the court assumes *arguendo* that ALJ Meyer erred in relying on vocational testimony that plaintiff's prior relevant work included a skilled job.

## D. Sufficiency of Hypothetical Question

When eliciting expert vocational testimony, an ALJ typically poses a hypothetical question that incorporates all vocational factors and functional impairments that the ALJ has found. If limitations recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony, the ensuing decision is considered to be supported by substantial evidence. *Morris v. Bowen,* 864 F.2d 333 (5th Cir.1988). Conversely, when the hypothetical question is defective due to the ALJ's failure to accurately portray a claimant's physical and mental impairments, a determination of non-disability based on the vocational expert's answer to a defective question is not supported by substantial evidence, and cannot stand. *Boyd v. Apfel,* 239 F.3d 698, 707 (5th Cir. 2001) (citing *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir.1994)).

■ Plaintiff argues that the vocational testimony relied upon by ALJ Meyer does not constitute substantial evidence because (1) ALJ Meyer's hypothetical question did not encompass all of plaintiff's limitations, specifically side effects of medication; and (2) the vocational expert's opinion that plaintiff has transferable skills is not supported by the record. The first objection is meritless because ALJ Meyer did not find that plaintiff is impaired due to side effects from medications, and he was not obliged to do so under the evidence. Although plaintiff testified that he suffers side effects from medication, the record does not reflect that he complained of side effects to his treating physician. Dr. Walkes's statement that plaintiff's medications "*could* affect [his] sensorium and equilibrium" (Tr. 437, emphasis added) does not provide proof that plaintiff actually suffers any side effects.

The second objection does not warrant reversal even if the point of error is accepted *arguendo*. If the court agrees that the record does not support the vocational expert's testimony that plaintiff previously worked in a skilled position, i.e., auto mechanic, the court would further conclude that the record lacks evidence that the plaintiff has transferable skills. Absent transferable skills, a vocational expert cannot properly opine that the plaintiff could perform alternative work at the skilled level. Thus, the court would be bound to conclude that substantial evidence does not support the vocational expert's opinion—and ALJ Meyer's conclusion in reliance thereupon—that plaintiff can work in alternative employment as a *counter salesman*, which the vocational expert testified is skilled work. Tr. 270.

This assumed error, however, is of little consequence because the vocational expert identified two other available jobs—*small products assembler* and *retail marker*—which are *unskilled* and thus do not require transferable skills from prior skilled work. Tr. 271. The vocational expert's testimony as to these jobs is unassailable, and thus constitutes substantial evidence. In other words, if the Commissioner were to omit altogether the vocational expert's opinion that plaintiff can perform alternative work as a *skilled* counter salesman, the Commissioner would not change her decision because there would remain unimpugned other evidence that plaintiff can work at *unskilled* alternative jobs as small products assembler and retail marker.

Plaintiff's point of error fails.

## V. Recommendation

The Commissioner's decision should be affirmed.

## VI. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).