United States Court of Appeals
Fifth Circuit

**F I L E D**

August 9, 2006

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals
For The Fifth Circuit*

No. 06-30229
Summary Calendar

JERRY L. CAIN,

  Plaintiff - Appellant,

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

  Defendant - Appellee.

Appeal from the United States District Court
For the Western District of Louisiana
No. 3:04-CV-02075

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:*

  Jerry Cain applied for disability insurance benefits under Title II of the Social Security

Act (SSA), alleging that he became disabled on December 22, 1992 due to lung disease,

limited range of motion in the right shoulder, back and neck pain, spondylosis, and difficulty

sleeping. Cain's application was denied initially, upon reconsideration, and after a hearing

by an Administrative Law Judge (ALJ). The Appeals Council granted review and remanded,

---

*Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

admonishing the ALJ to adequately discuss the treating and examining source opinions, Cain's subjective complaints of pain, and his residual functional capacity. After the first remand, an ALJ determined that Cain was disabled as of November 26, 1997, the date of his fiftieth birthday,[1] but not prior to that time. The Appeals Council granted review and remanded twice more, finding that the various ALJs' opinions still suffered from the same shortcomings. Eventually, an ALJ rendered an opinion that Cain was not disabled prior to his fiftieth birthday, and the Appeals Council declined review. Cain sought further review in the federal district court, which affirmed. Cain appeals the determination that he was not disabled between his alleged onset date and the date of his fiftieth birthday (the "relevant period" for purposes of this appeal).

We review the Commissioner's decision to deny benefits for substantial evidence and application of the proper legal standards.[2] Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"[3] and is "more than a mere scintilla[] and less than a preponderance."[4] If supported by substantial evidence, the Commissioner's factual findings are conclusive.[5] "The court does not reweigh

---

[1]*See* 20 C.F.R. Part 404, App. 2, Rule 201.14 (directing a finding of disability for a claimant who is closely approaching advanced age, is a high school graduate, has no transferable skills, and is restricted to sedentary work).

[2]*See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[3]*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted).

[4]*Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

[5]42 U.S.C. § 405(g).

the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[6]  The Commissioner, rather than the court, is charged with resolving any conflicts in the evidence.[7]

Cain bears the burden of proving he suffers from a disability under the SSA.[8] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months."[9]  The Commissioner uses the familiar five-step sequential process to evaluate disability claims and considers whether: (1) the claimant is performing substantial gainful activity; (2) the claimant has a "severe impairment"; (3) the claimant's impairment meets or equals one listed in Appendix 1 of the regulations; (4) the claimant has the residual functional capacity (RFC) to perform his past relevant work; and (5) the claimant can make an adjustment to other work in light of his age, education, work experience, and RFC.[10]  If the claimant shows that he is disabled under the first four steps, the burden shifts to the Commissioner for the fifth step to demonstrate that the claimant can perform other substantial work in the national economy.[11]  A finding that

---

[6]*Newton*, 209 F.3d at 452.

[7]*Id.*

[8]*Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).

[9]42 U.S.C. § 423(d)(1)(A).

[10]20 C.F.R. § 404.1520.

[11]*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

the claimant is not disabled at any step is conclusive and ends the inquiry.[12]  Here, the ALJ found that Cain was not disabled because, although he could not return to his past relevant work as a firefighter, he had the RFC, meaning the most he could do despite his limitations,[13] to perform other work existing in significant numbers in the national economy, such as an order clerk or a charge account clerk.

Cain first argues that the ALJ erred by rejecting the opinions of all his treating and examining physicians, as well as the medical expert selected by the Social Security Administration, without applying the six step analysis set forth in the regulations and *Newton v. Apfel*.[14]  Contrary to Cain's assertions, the ALJ did not entirely reject the opinions of all the treating and examining physicians or the medical expert and, in fact, incorporated many of their opinions into his RFC determination.  Specifically, the ALJ concluded that Cain's RFC was limited by the need to sit or stand at will, thus reflecting the opinion of his examining physician, Dr. Irby, that Cain could not sit for longer than an hour at a time due to his back condition, spondylosis.  Moreover, the ALJ concluded that Cain could not perform any overhead work with his right arm, thus incorporating the opinion of Dr. Liles, another examining physician, that Cain's shoulder impairment limited his ability to lift his right arm.  Finally, the ALJ gave controlling weight to the work restrictions outlined by Cain's treating pulmonary specialist, Dr. Maran, including a restriction against even

---

[12]*Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[13]20 C.F.R. § 404.1545(a).

[14]209 F.3d 448 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(d).

4

moderate exposure to environmental irritants.

However, the ALJ rejected as speculative Dr. Maran's later opinion that Cain was totally disabled due to the possibility of environmental triggers causing exacerbations of his lung condition and resulting in complete debilitation for days at a time. The ALJ's rejection of this latter opinion was not erroneous for the following reasons. First, "the ALJ has sole responsibility for determining a claimant's disability status[,]"[15] and Dr. Maran's opinion that Cain is disabled, a decision reserved to the ALJ, is not entitled to any special significance under the regulations.[16] Second, the ALJ's decision to reject Dr. Maran's opinion as speculative was supported by substantial evidence, and the ALJ was not required to go through all six steps in *Newton* in the face of competing first-hand medical evidence.[17] Although Cain experienced some exacerbations of his pulmonary disease during the five-year period at issue, including five episodes of bronchitis, Cain was often doing relatively well when he saw Dr. Maran, his lung capacity was only moderately reduced during most visits, and he responded favorably to treatment. Dr. Kraker, who examined Cain on one occasion, felt that Cain could perform work-related activities and opined that his prognosis was "quite good" as long as he maintained his medication therapy and avoided significant respiratory irritants. Finally, as late as May 1996, Dr. Irby noted that Cain's lung capacity showed

---

[15]*Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

[16]20 C.F.R. § 404.1527(e)(1)-(3).

[17]*Newton*, 209 F.3d at 458; *Walker v. Barnhart*, No. 04-31256, 158 Fed. Appx. 534 (5th Cir. Dec. 9, 2005) (interpreting *Newton* as not requiring the six-step analysis in the face of competing first-hand medical evidence).

significant improvement with the use of bronchodilators and found the measurements consistent with a "mild obstructive ventilatory defect." The ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his.[18]

The ALJ also did not err by rejecting the opinion of Dr. Ebrahim, the medical expert selected by the Social Security Administration, that Cain's pulmonary disease and right shoulder impairment met the listing requirements of Appendix 1 to the regulations. Like the determination of disability, this determination is one reserved to the Commissioner, and Dr. Ebrahim's opinion is not entitled to special significance.[19] Moreover, Dr. Ebrahim's opinion was not supported by the evidence. As noted by the ALJ, Dr. Ebrahim cited only one pulmonary study in support of his conclusion that Cain's pulmonary disease met the listing requirement, and that study was performed during a time of exacerbation. On most occasions, Cain's measurements were well above the listing requirement. Moreover, Cain's symptoms improved with the use of a bronchodilator. Thus, Cain's lung impairment did not meet or equal one under Appendix 1 of the regulations, which require consistently low measurements during times of non-exacerbation and no improvement despite treatment.[20] With respect to Cain's right shoulder impairment, the record shows that he sought treatment

---

[18]*Newton*, 209 F.3d at 452.

[19]20 C.F.R. § 404.1527(e)(1)-(3).

[20]*See* 20 C.F.R. Part 404, App. 1, 3.00E (requiring the measurements of lung capacity to be performed during a time of non-exacerbation and, if not contraindicated, after the use of a bronchodilator); *id.* at 3.00A (requiring continuing signs and symptoms despite a regimen of prescribed treatment for the asthma listing).

soon after he began complaining of severe shoulder pain, and that he quickly had surgery, which improved his pain and range of motion. Although his movement was limited, it was not so limited as to meet the listing requirement for the required 12-month period.[21]

Cain further argues that the ALJ was obligated to recontact the physicians to seek clarification of their opinions. The regulations dictate that the ALJ is to recontact the physicians if the evidence is inadequate for the ALJ to make a disability determination.[22] Social Security Ruling 96-5p further explains that the treating sources are to be recontacted if the basis for their opinions is unclear. Here, the ALJ was only unclear as to the basis of Dr. Ebrahim's opinion that Cain's impairments met the listing requirements, and he recontacted the doctor in compliance with the regulations. There is no indication that the ALJ was unclear as to the basis for any of the remaining physicians' opinions, and he did not err by failing to recontact them.

Next, Cain argues that the ALJ erred by rejecting his testimony regarding his pain, limitations, and the side effects of his medication. The ALJ did not actually reject Cain's testimony, but merely discounted it as not entirely credible, and his decision to do so was based on substantial evidence.[23] Significantly, the record reveals that Cain's back pain

---

[21]*See id.* at 1.00, 1.02; *see also* 42 U.S.C. § 423(d)(1)(A) (requiring disability to last for a continuous period of not less than 12 months).

[22]*See* 20 C.F.R. § 404.1512(e).

[23]*See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference."); *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994) (noting that, although the ALJ must explain his reasons for rejecting a claimant's complaints of pain, he need

7

improved with epidural injections, and that his shoulder pain improved following surgery. The record contains some complaints of side effects from Cain's medications, but no significant complaints during the relevant five-year period. Specifically, Cain did not complain that his insomnia became incapacitating or his gastric problems significant until after the relevant period. Finally, Cain's testimony that he could not perform any work activities because of his tendency to experience shortness of breath upon minimal exertion is contradicted by the objective medical evidence, including his physicians' opinions that he could work within certain restrictions and his favorable response to treatment.

Cain further argues that the ALJ should have afforded special significance to his wife's opinion regarding his limitations and the side effects of his medication because she is a registered nurse and that the ALJ instead completely ignored her opinion. First, the ALJ mentioned Cain's wife's opinion after he discussed Cain's testimony, specifically noting that his wife's testimony confirmed his. The ALJ then implicitly discounted her testimony, along with Cain's, as not credible to the extent alleged.[24] The ALJ did not err by discounting her opinion because, even if she qualifies as a medical source under the regulations,[25] her opinion regarding Cain's limitations, like Dr. Maran's opinion discussed above, is not fully supported

---

not "follow formalistic rules in his articulation").

[24]*See Falco*, 27 F.3d at 163 (stating that requiring the ALJ to specifically articulate the evidence accepted and rejected was an unnecessarily rigid approach).

[25]*Compare* 20 C.F.R. § 404.1513(a) (failing to list registered nurse as an acceptable medical source), *with id.* § 404.1513(d) (stating that the ALJ may use evidence from other sources, including medical sources not listed in part (a), such as nurses).

by the record. Neither is her opinion regarding the side effects of Cain's medications, as just discussed.

Finally, Cain argues that the ALJ disregarded the vocational expert's testimony that an inability to maintain attention for a two-hour segment would eliminate all competitive work. However, this hypothetical, which was propounded by Cain's attorney, has no support in the objective medical evidence, and the ALJ need not rely on vocational expert testimony in response to a hypothetical containing assumptions the ALJ ultimately rejects as unsupported by the evidence.[26] When the ALJ proposed a hypothetical to the vocational expert in which a person had moderate limitations in the ability to concentrate, but could still perform activities satisfactorily, the expert replied that the attention limitation would not affect his ability to perform the jobs of order clerk and charge account clerk.

AFFIRMED.

---

[26]*See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (agreeing with the district court that the ALJ's hypothetical reasonably incorporated the disabilities recognized by the ALJ).